IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

In re

                                                                        Case No. 12-33078

BENCHMARK CAPITAL, INC.

        Debtor

**MEMORANDUM ON MOTION
FOR RELIEF FROM THE AUTOMATIC STAY**

**APPEARANCES:**    ARNETT, DRAPER & HAGOOD
                              Dan D. Rhea, Esq.
                              Post Office Box 300
                              Knoxville, Tennessee  37901-0300
                              Attorneys for William Raymond Bicknell, Jr.

                              GENTRY, TIPTON & MCLEMORE, P.C.
                              Maurice K. Guinn, Esq.
                              John M. Kizer, Esq.
                              Post Office Box 1990
                              Knoxville, Tennessee  37901
                              Attorneys for F. Scott Milligan, Chapter 7 Trustee

                              AYERS & PARKEY
                              Edward J. Shultz, Esq.
                              Post Office Box 23380
                              Knoxville, Tennessee  37933
                              Attorneys for Debtor

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Motion for Relief From the Automatic Stay (Motion for Stay Relief) filed on September 6, 2012, by William Raymond Bicknell, Jr. (Movant), asking the court, pursuant to 11 U.S.C. § 362(d)(1) (2006), to annul the automatic stay and retroactively validate the post-petition foreclosure sale of real property located at 2710 Ball Camp Byington Road, Knoxville, Tennessee (Ball Camp Byington Road Property). The Response of F. Scott Milligan, Trustee, to Motion by William Raymond Bicknell, Jr. for Relief From the Automatic Stay (Response to Motion for Stay Relief) was filed by the Chapter 7 Trustee, F. Scott Milligan (Trustee), on September 17, 2012. Pursuant to the Agreed Order entered on October 24, 2012, the parties agreed that an evidentiary hearing was not required and the Motion for Stay Relief could be decided upon stipulations and briefs. Accordingly, the Stipulations of William Raymond Bicknell, Jr. and F. Scott Milligan, Trustee (Joint Stipulations) were filed on October 22, 2012, as were the Memorandum of Law in Support of Motion for Relief From the Automatic Stay filed by the Movant and the Trustee's Brief in Opposition to Motion for Relief From the Automatic Stay filed by the Trustee. To clarify certain facts not fully addressed by the Joint Stipulations, the court, on its own motion, by an Order entered on November 16, 2012, directed that it would hear additional proof on December 10, 2012. Prior to that hearing, the parties filed two additional stipulated exhibits and the Supplement to Stipulations of William Raymond Bicknell, Jr. and F. Scott Milligan, Trustee (Supplemental Joint Stipulations). Additionally, the Movant filed the Supplemental Memorandum of Law in Support of Motion for Relief From the Automatic Stay on January 17, 2013, and the Trustee filed the Supplement to Trustee's Brief in Opposition to Motion for Relief From the Automatic Stay on January 18, 2013.

# I

On August 6, 2001, Benchmark Capital, Inc. was incorporated by the State of Tennessee with 5641 Merchants Ctr. Blvd., Suite A-103, Knoxville, Tennessee 37912, listed as the principal place of business. JT. STIPS. at ¶¶ 2, 6; EX. 8. Pursuant to the Charter, its purpose was "[t]o provide excellent service and value to customers and clients by providing various financial services and products." EX. 8. On August 31, 2001, Benchmark Capital, Inc. purchased the Ball Camp Byington Road Property from the Movant pursuant to a Warranty Deed and secured the purchase price by a Deed of Trust executed in favor of the Movant encumbering the property, both of which were recorded with the Knox County Register of Deeds on September 11, 2001. JT. STIPS. at ¶¶ 3-4; EX. 2; EX. 3. The Deed of Trust was executed on behalf of Benchmark Capital, Inc. by Charles Daniel Candler and Brian Keith Murphy. JT. STIPS. at ¶ 5; EX. 3. Benchmark Capital, Inc. was later administratively dissolved by the State of Tennessee on September 20, 2002. JT. STIPS. at ¶ 7. During his lifetime, Charles Daniel Candler was the sole owner of Benchmark Capital, Inc., and neither any stock certificates nor any organizational documents for Benchmark Capital, Inc. other than the Charter have been located. SUPP. JT. STIPS. at ¶¶ 1, 3.

Charles Daniel Candler died intestate on March 1, 2012, and on April 27, 2012, the Chancery Court for Knox County, Probate Division, appointed Amparo Jarosh as Personal Representative of Mr. Candler's estate. JT. STIPS. at ¶¶ 8-9; EX. 9. On July 27, 2012, Benchmark Capital, Inc. filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code authorized and signed by Amparo Jarosh in her capacity as Personal Representative for the Estate of Charles Daniel Candler. JT. STIPS. at ¶¶ 1, 10. When she filed the bankruptcy case on behalf of the Debtor, Ms. Jarosh was not aware

that Charles Daniel Candler was the sole owner of Benchmark Capital, Inc. SUPP. JT. STIPS. at ¶ 2. In conjunction with the Voluntary Petition, Ms. Jarosh also signed and filed the Statement of Financial Affairs and schedules on the Debtor's behalf. JT. STIPS. at ¶ 12; EX. 5; EX. 6. The Movant was listed among the Debtor's creditors and was sent notice of the Debtor's bankruptcy case. JT. STIPS. at ¶ 11; EX. 4. Neither the Movant nor the substitute trustee conducting the foreclosure sale received notice of the bankruptcy filing prior to the July 30, 2012 foreclosure and the Movant's purchase of the Ball Camp Byington Road Property as evidenced by the Substitute Trustee's Deed executed and recorded in the Office of the Knox County Register of Deeds on the same date. JT. STIPS. at ¶¶ 13-14; EX. 7. Thereafter, the Movant filed this Motion for Stay Relief on September 6, 2012, asking the court to annul the stay to validate the July 30, 2012 foreclosure sale. JT. STIPS. at ¶ 16.

The court entered a scheduling Order on October 5, 2012, which was supplemented by an Agreed Order entered on October 24, 2012, wherein the parties agreed to resolve the issue as stated: whether Mr. Bicknell is entitled to annulment of the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to validate the post-petition foreclosure of the Debtor's real estate.

## II

The automatic stay, the protections of which are "automatic and mandatory with the filing of the bankruptcy petition[,]" *Enron Corp. v. Calif. ex rel. Lockyer (In re Enron Corp.)*, 314 B.R. 524, 533 (Bankr. S.D.N.Y. 2004), provides debtors with the opportunity to protect assets in order to marshal their resources in order to satisfy their outstanding obligations, and was designed "to give

the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'" *In re Haas*, 2004 WL 3132027, at *2, 2004 Bankr. LEXIS 2216, at *6 (Bankr. E.D. Va. Dec. 22, 2004) (quoting H.R. REP. NO. 95-595 at 340 (1977)). "The scope of the automatic stay is broad and is a fundamental debtor protection that not only protects debtors but protects creditors as well." *Enron Corp.*, 314 B.R. at 533 (internal citations omitted). It is elementary that "the [automatic] stay comes into existence 'automatically' and 'immediately' upon the filing of a petition in bankruptcy[,]" *Shaw v. Ehrlich*, 294 B.R. 260, 268 (W.D. Va. 2003), it remains in effect throughout the pendency of a debtor's bankruptcy case, and its purpose is "to provide the debtor a 'breathing spell' from collection efforts and to shield individual creditors from the effects of a 'race to the courthouse,' thereby promoting the equal treatment of creditors." *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001). Actions taken in violation of the automatic stay are "invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993).

Nevertheless, in order that they are not "deprived of the benefit of their bargain" during the pendency of the bankruptcy case, creditors may seek relief from the automatic stay. *In re Miller*, 2011 WL 5075549, at *2, 2011 Bankr. LEXIS 4112, at *4-5 (Bankr. E.D. Tenn. Oct. 25, 2011) (citing *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 737 (6th Cir. 1994) and *In re Planned Sys., Inc.*, 78 B.R. 852, 860 (Bankr. E.D. Ohio 1987)). Motions for relief from the automatic stay are filed pursuant to 11 U.S.C. § 362(d) which states, in material part, that after notice and a hearing, "the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or

conditioning such stay — for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" 11 U.S.C. § 362(d)(1). In support of his request that cause exists to annul the stay to retroactively validate the July 30, 2012 foreclosure, the Movant argues that the Debtor did not file the bankruptcy case in that Ms. Jarosh did not have proper authority to file a bankruptcy petition on behalf of Benchmark Capital, Inc., which was administratively dissolved by the Tennessee Secretary of State in 2002, that the Debtor is not an entity which may be a debtor under 11 U.S.C. § 301 (2006), and that a case has not properly been commenced; therefore, the stay has not – or should not have – lawfully gone into effect.

"A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." 11 U.S.C. § 301(a). Under the Bankruptcy Code, "[t]he term 'person' includes individual, partnership, and corporation[.]" 11 U.S.C. § 101(41) (2006). Whether a corporation has the capacity to file a bankruptcy petition is controlled by state law. *In re Superior Boat Works, Inc.*, 438 B.R. 878, 880 (Bankr. N.D. Miss. 2010). Under Tennessee law, an administratively dissolved corporation "continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under § 48-24-105 and notify claimants under §§ 48-24-106 and 48-24-107." TENN. CODE ANN. § 48-24-202(c) (2012).

> (a) A dissolved corporation continues its corporate existence but may not carry on any business, except that appropriate to wind up and liquidate its business and affairs, including:
>
>   (1) Collecting its assets;
>
>   (2) Conveying and disposing of its properties that will not be distributed in kind to its shareholders;

6

>   (3) Discharging or making provision for discharging its liabilities;
>
>   (4) Distributing its remaining property among its shareholders according to their interests; and
>
>   (5) Doing every other act necessary to wind up and liquidate its business and affairs.
>
> (b) Dissolution of a corporation does not:
>
>   (1) Transfer title to the corporation's property;
>
>   (2) Prevent transfer of its shares or securities, although the authorization to dissolve may provide for closing the corporation's share transfer records;
>
>   (3) Subject its directors or officers to standards of conduct different from those prescribed in chapter 18 of this title;
>
>   (4) Change quorum or voting requirements for its board of directors or shareholders; change provisions for selection, resignation, or removal of its directors or officers or both; or change provisions for amending its bylaws;
>
>   (5) Prevent commencement of a proceeding by or against the corporation in its corporate name;
>
>   (6) Abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution; or
>
>   (7) Terminate the authority of the registered agent of the corporation.

TENN. CODE ANN. § 48-24-105 (2012).

When a corporation is administratively dissolved, its assets and any causes of action pass to its shareholders. *KHB Holdings, Inc. v. Duncan*, 2003 WL 21488268, at *2, 2003 Tenn. App. LEXIS 457, at *5 (Tenn. Ct. App. June 25, 2003) (citing *Jesse A. Bland Co. v. Knox Concrete Prods., Inc.*, 338 S.W.2d 605, 607-08 (Tenn. 1960)); *see also Schlater v. Haynie*, 833 S.W.2d 919, 926 (Tenn. Ct. App. 1991) ("Upon the dissolution of a corporation, the stockholders succeed to the

equitable ownership of its assets subject to the claims of the creditors of the corporation."); *Mountcastle v. Baird*, 1988 WL 5682, at *2, 1988 Tenn. App. LEXIS 38, at *4 (Tenn. Ct. App. Jan. 29, 1988) ("When a corporation's charter is revoked, the corporation ceases to exist and all property passes to the stockholders as tenants in common.") (citing 19 AMJUR.2d *Corporations* § 2892 (1986)). Accordingly, even if an owner continues to operate the business, file tax returns and maintain bank accounts in the name of the corporation, once it has been administratively dissolved, the nature and structure of the business changes from a corporation to a partnership or sole proprietorship. *See Powers v. Terry*, 2001 WL 1516958, at *3, 2001 Tenn. App. LEXIS 872, at *12 (Tenn. Ct. App. Nov. 29, 2001).

Although there are no cases interpreting the above referenced statutes in connection with whether an administratively dissolved Tennessee corporation may file for bankruptcy, the courts in a number of states with similar – if not identical – statutes have held that an administratively dissolved corporation may file for bankruptcy as a part of its "winding-up" period. *See, e.g., Superior Boat Works, Inc.*, 438 B.R. at 883 ("This Court is persuaded that statutory language authorizing a dissolved corporation to do 'every other act necessary to wind up and liquidate its business affairs' must include liquidating through bankruptcy proceedings regardless of whether the dissolved corporation has statutory authority to reinstate."); *Saslow v. Times Oil Corp. (In re 4 Seasons Express Mart, Inc.)*, 2007 WL 433387, at *1, 2007 Bankr. LEXIS 439, at *3 (Bankr. M.D.N.C. Feb. 6, 2007) ("The commencement of a Chapter 7 case obviously is one way to wind up and liquidate a corporation. It follows that the Debtor continued to exist and had the capacity to commence a Chapter 7 bankruptcy case and thereby invoke the jurisdiction of the bankruptcy

8

court."); *In re Quad City Minority Broad., Inc.*, 252 B.R. 773, 778 (Bankr. S.D. Iowa 2000) ("[T]he Court finds that a corporation administratively dissolved under Iowa law may be a chapter 7 debtor[.]"); *In re Prism Props., Inc.*, 200 B.R. 43, 47 (Bankr. D. Ariz. 1996) ("State law provides . . . that after revocation a corporation may continue to act to preserve and pursue assets and claims and settle liabilities, and accordingly the Debtor may liquidate under the Bankruptcy Code, either via a liquidating Chapter 11 plan or under Chapter 7."); *In re Tri-Angle Distribs., Inc.*, 102 B.R. 151, 153 (Bankr. N.D. Ind. 1989) ("The court thus finds that Indiana law does not prohibit a dissolved corporation from filing a petition under Chapter 7 of the Bankruptcy Code in order to wind up and liquidate its business and affairs.").

The record reflects that the Debtor was administratively dissolved by the State of Tennessee on September 20, 2002, at which time, all of its assets and property – including the Ball Camp Byington Road Property – passed by operation of law to Mr. Candler, who was the Debtor's sole owner when he died on March 1, 2012. Because under the authority of Tennessee Code Annotated § 48-24-105(a) "[a] dissolved corporation continues its corporate existence" and may carry on business "appropriate to wind up and liquidate its business and affairs," the court finds that Charles Daniel Candler possessed the authority to act on behalf of the corporation and file the bankruptcy petition, as its owner or shareholder. Therefore, Mr. Candler's personal representative was likewise authorized to file the bankruptcy petition on behalf of the Debtor, irrespective of the fact that she, personally, was not an officer or agent of the corporation or that she did not know at the time that Mr. Candler was the Debtor's sole owner. Under Tennessee law, "the personal representative shall be vested with the personal property of the decedent for the purpose of first paying administration

9

expenses, taxes, and funeral expenses and then for the payment of all other debts or obligations of the decedent . . . [but i]f the decedent's personal property is insufficient for the discharge or payment of a decedent's obligations, the personal representative may utilize the decedent's real property." TENN. CODE ANN. § 31-2-103 (2007).  A probate proceeding is an "in rem" action focusing on the decedent's estate that "enables the deceased's personal representative to, among other things, (1) notify the decedent's beneficiaries that the will has been filed for probate; (2) collect and inventory the decedent's assets; (3) resolve the claims submitted by the creditors of the decedent and the estate; (4) manage the decedent's estate; (5) make interim distributions of the estate when appropriate; and (6) file interim accountings." *In re Estate of Trigg*, 368 S.W.3d 483, 496-97 (Tenn. 2012) (footnotes omitted).  "An executor is charged with the duty of getting possession and control of the assets of the estate and in this connection is authorized to maintain such actions as necessary to obtain possession of the property belonging to the estate." *In re Estate of Walker*, 1995 WL 134518, at *1, 1995 Tenn. App. LEXIS 191, at *3 (Tenn. Ct. App. Mar. 29, 1995); *see also* TENN. CODE ANN. § 30-2-301(a) (Supp. 2012) ("The personal representative . . . shall make a complete and accurate inventory of the probate estate of the deceased, and return the inventory to the clerk of the court . . . and verify it[.]").

As the personal representative of Mr. Candler's probate estate, Ms. Jarosh was vested, under Tennessee law, with the authority to gain possession and/or take control of Mr. Candler's property – both personal and real.  Because Benchmark Capital, Inc. was an administratively dissolved corporation and control over all of its property had passed to its shareholders, i.e., Mr. Candler, it is irrelevant that there were no stock certificates discovered or that delivery of stock certificates to

Ms. Jarosh did not occur. Accordingly, although the Movant has argued to the contrary, the property in question in this contested matter is not the Debtor's stock but the Debtor's assets, including the Ball Camp Byington Road Property. Ms. Jarosh, as the personal representative of Mr. Candler's probate estate, was authorized to take whatever action was necessary to preserve the Ball Camp Byington Road Property for the benefit of Mr. Candler's probate estate, including the filing of a bankruptcy case to protect the real property from foreclosure.

Having found that the Voluntary Petition filed on July 27, 2012, commencing this Chapter 7 bankruptcy case was effective as to the Debtor, the court also finds that the automatic stay was properly in effect when the July 30, 2012 foreclosure sale occurred. Accordingly, the sole remaining issue is whether cause exists to annul the automatic stay to validate the sale. "Of the four enumerated types of relief in § 362(d), annulment is unique in that it asks the court to retroactively permit an action taken in violation of the stay." *In re Elder-Beerman Stores Corp.*, 195 B.R. 1012, 1017 (Bankr. S.D. Ohio 1996). Under Sixth Circuit authority,

> [b]ankruptcy courts have the jurisdiction to modify the automatic stay so as to allow actions against the debtor. 11 U.S.C. § 362(d). This section expressly permits the bankruptcy court to annul the stay. This power to annul "permits the order to operate retroactively, thus validating actions taken by a party at a time when he was unaware of the stay. Such actions would otherwise be void." 2 Collier on Bankruptcy § 362.07 (footnotes omitted). If we are to give effect to the statutory authority to annul a stay, such actions can only be described as invalid and voidable, since void actions are incapable of later cure or validation.

*Easley*, 990 F.2d at 909-10 (footnote omitted). "The stay may be annulled only in the presence of extraordinary circumstances, which include the debtor's bad faith filing of the bankruptcy case, a creditor's lack of 'knowledge of the applicability of the automatic stay,' and unfair prejudice to the creditor[,]" *In re Burrell*, 186 B.R. 230, 235 (Bankr. E.D. Tenn. 1995) (citations omitted), and the

11

equitable exceptions justifying annulment of the stay "must be applied sparingly." *Printup*, 264 B.R. at 176. "We suggest that only where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, will the protections of section 362(a) be unavailable to the debtor." *Easley*, 990 F.2d at 911. "Among the factors to be considered are the debtor's bad faith in filing the bankruptcy petition and the moving party's knowledge of the bankruptcy at the time of its action. . . . . Absent a finding of bad faith, courts may also grant retroactive relief if they find that the moving party had no knowledge of the bankruptcy at the time of its action, and the court finds that it would have granted relief before the act, had such relief been timely requested." *Elder-Beerman Stores Corp.*, 195 B.R. at 1017.

The parties have stipulated that the Movant did not have notice that the Debtor's bankruptcy case had been filed when the July 30, 2012 foreclosure took place. Nevertheless, a lack of notice is not a defense to the automatic stay when it is undisputed that notice was not withheld by Ms. Jarosh. As evidenced by Trial Exhibit 4, notice of the bankruptcy filing was mailed to the Movant at 337 Dunn Farm Road, Cleveland, Tennessee, on August 1, 2012. Likewise, there is nothing in the record to suggest that the bankruptcy case was filed in bad faith or that the Debtor is attempting to use automatic stay unfairly as a shield. It is undisputed that the Debtor has not previously filed for bankruptcy protection. Additionally, filing three days prior to the scheduled foreclosure sale does not, in and of itself, constitute bad faith. *See, e.g., In re DuPuy*, 308 B.R. 843, 850 (Bankr. E.D. Tenn. 2004) ("[B]ad faith is not necessarily construed simply because a debtor files for bankruptcy on the eve of foreclosure; however, such conduct may be 'probative' of bad faith,

especially when it has happened repeatedly with the same creditor.") (citing *In re Glenn*, 288 B.R. 516, 520 (Bankr. E.D. Tenn. 2002)). Instead, the Debtor's bankruptcy case was filed by Ms. Jarosh in furtherance of her statutory duties as Mr. Candler's personal representative to collect and inventory his assets, which included all assets of the administratively dissolved Debtor. It was not bad faith for her to act in the best interest of Mr. Candler's creditors, among them, the Movant. *See, e.g., In re Tyson*, 450 B.R. 754, 765 (Bankr. W.D. Tenn. 2011) ("There is simply no evidence that the Debtor is attempting to use the protections of the automatic stay to do anything other [than] obtain the protections afforded her by the Bankruptcy Code."). Furthermore, having found that the Debtor did not abuse the bankruptcy process by the filing of the bankruptcy case, denial of the Motion for Stay Relief would put the Movant on the same level as the Debtor's other creditors.

The court also finds that there is nothing in the record to prove that the Movant will be unduly prejudiced if the automatic stay is not annulled or that he would have been granted relief from the automatic stay had he requested relief. The Ball Camp Byington Road Property is property of the Debtor's bankruptcy estate and as a creditor, the Movant, assuming the integrity of its lien, will have the rights afforded a secured creditor. His assertion in the Motion for Stay Relief that continuation of the automatic stay and invalidation of the July 30, 2012 foreclosure sale "imposes an unjustified and inequitable cloud on the movant's current title to real estate, without Bankruptcy Code authorization" is unsupported by the record and without merit. There are no averments that the Movant has incurred improvement costs with respect to the Ball Camp Byington Road Property or that he has been forced to forego improvements to the property. Without any sort of substantive evidence that the Movant will be unduly prejudiced, coupled with the fact that the Debtor has not

13

filed the case in bad faith or in an attempt to unjustly use the automatic stay as a shield, the court does not find that the required extraordinary circumstances are present to justify annulment of the automatic stay to validate the July 30, 2012 foreclosure sale. Accordingly, the sale shall be declared void, and the Ball Camp Byington Road Property shall remain property of the Debtor's estate to be administered with the Debtor's other assets by the Trustee.

An Order consistent with this Memorandum will be entered.

FILED: April 9, 2012

                                                BY THE COURT

                                                */s/ RICHARD STAIR, JR.*

                                                RICHARD STAIR, JR.
                                                UNITED STATES BANKRUPTCY JUDGE